# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

CDC PROPERTIES I, LLC,

      Debtor.

_____

MLMT 2005-MCP1 WASHINGTON OFFICE
PROPERTIES, LLC, a Washington limited
liability company,

      Appellant,

      v.

ERIC D. ORSE, individually, and the marital
community of ERIC D. ORSE and "JANE DOE"
ORSE, husband and wife; KARR TUTTLE
CAMPBELL, a Washington Professional
Services Corporation; and CDC PROPERTIES I
LLC,

      Appellees.

District Court Case No. 3:20-cv-05106-RBL

Bankruptcy Case No. 11-41010-BDL

Adversary Case No. 18-04073-BDL

Internal Appeal No. 20-T001

**APPELLEES' BRIEF**

APPELLEES' BRIEF
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 8012, Appellees make the following corporate disclosure statement:

1. CDC Properties I LLC ("CDC") is a Delaware limited liability company not a publicly traded company and no parent corporation of CDC is a publicly traded company.

2. CDC is a wholly-owned subsidiary of CDC Acquisition Co. I LLC, which is a Delaware limited liability company and wholly owned subsidiary of Prium Companies, L.L.C. Prium Companies, L.L.C. is Washington a limited liability company with two members: Thomas W. Price and Hyun J. Um.

3. Karr Tuttle Campbell, P.S. is a Washington professional service corporation. It has no parent corporation and no public corporation owns any stock.

APPELLEES' BRIEF - i
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 2

STATEMENT OF ISSUES ............................................................................................... 3

STATEMENT OF THE CASE .......................................................................................... 3

    I.       The MLMT Loans and the CDC Plan ................................................................ 3

    II.      The Price/Um and Prium Bankruptcies .......................................................... 4

    III.    The Sale of the Wenatchee Properties ............................................................. 5

    IV.    CDC Defaults on the Loans and the Sale to Pilevsky Group ............................ 6

    V.     Plaintiff's Complaint, the Trial and the Bankruptcy Court's Decision ................ 9

SUMMARY OF ARGUMENT ........................................................................................ 11

ARGUMENT .................................................................................................................. 13

    I.       The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing the Contempt Claim ............................................................................................. 13

          A.     The Bankruptcy Court Applied the Correct Legal Standard. ................. 13

          B.     The Bankruptcy Court Correctly Concluded that Paragraph VII.6 of the Plan Was Not A Specific and Definite Order but a Contractual Provision ............................................................................. 14

          C.     Making All Plan Violations Acts of Contempt Will Have Negative Consequences. ................................................................................. 18

    II.      The Orse Defendants Did Not Commit Any Act of Contempt ............................ 19

          A.     Paragraph VII.6 is too Vague and Ambiguous to Support a Contempt Finding. ................................................................................. 20

          B.     There is No Basis for an Award of Sanctions. ........................................ 23

    III.    Defendants Suffered No Contempt Damages as a Proximate Result of the Alleged Contempt ................................................................................. 25

CONCLUSION ............................................................................................................... 26

APPELLEES' BRIEF - ii
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

# **TABLE OF AUTHORITIES**

## Cases

*Clearant, LLC v. Nacion*, 2019 U.S. Dist. LEXIS 100558 (E.D. Mo. June 17, 2019) ...............20

*Deed & Note Traders, L.L.C. (In re Deed & Note Traders, L.L.C.)*, 2018 Bankr. LEXIS 759 (B.A.P. 9th Cir. Mar. 14, 2018) ..................................................18

*Dong Wan Kim v. O'Sullivan*, 133 Wn. App. 557, 137 P.3d 61 (2006) .......................................25

*Faden v. Segal (In re Segal)*, 2015 Bankr. LEXIS 286 (B.A.P. 9th Cir. Jan. 29, 2015) .............25

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119 (9th Cir. 2014).....................3

*Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986)..........................................25

*Hillis Motors Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581 (9th Cir. 1993).......15, 19

*In re Am. W. Dev., Inc.*, 2018 Bankr. LEXIS 1346 (Bankr. D. Nev. Apr. 12, 2018) .................16

*In re Benjamin Coal Co.*, 978 F.2d 823 (3d Cir. 1992) ...............................................................14

*In re Boise Gun Co.*, 2018 Bankr. LEXIS 72 (Bankr. D. Id. Jan. 12, 2018) ...............................16

*In re Charleston Assocs., LLC*, 2018 Bankr. LEXIS 2227 (D. Nev. July 24, 2018) ..................16

*In re Dendy*, 396 B.R. 171 (Bankr. D.S.C. 2008) .................................................................13, 18

*In re Dyer*, 322 F.3d 1191 (9th Cir. 2003).....................................................................18, 19, 24

*In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009)........................................................21

*In re Xofox Indus. Ltd.*, 241 B.R. 541 (Bankr. E.D. Mich. 1999)...............................................15

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 88 S. Ct. 201, 19 L. Ed. 2d 236 (1967) ..........................................................................................................20

*Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178 (9th Cir. 2003) ...............................................2

*Lovell v. Evergreen Resources, Inc.*, 1995 U.S. Dist. LEXIS 22824 (N.D. Cal. 1995) ..............25

*Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) ................................................................14

*Murdock v. Holquin*, 323 B.R. 275 (N.D. Cal. 2005)...........................................................14, 15

*Nat'l City Bank v. Troutman Enters. (In re Troutman Enters.)*, 253 B.R. 8 (B.A.P. 6th Cir. 2000)...............................................................................................................................15

*Norwest Equipment Finances, Inc. v. Nath (In re D & P Partnership)*, 91 F.3d 1072 (8th Cir. 1996)...........................................................................................................................15

*Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990) .........................................................................15

*Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059 (9th Cir. 2002) ...........................18, 19, 24

*Rinehart v. Brewer*, 483 F. Supp. 165 (S.D. Iowa 1980)............................................................23

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ...................................................................................20

APPELLEES' BRIEF - iii
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

*Shuffler v. Heritage Bank*, 720 F.2d 1141 (9th Cir. 1983)..............................................................25

*Southwest Marine, Inc. v. Danzig*, 217 F.3d 1128 (9th Cir. 2000).....................................15, 19

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) ...........................19, 20, 22, 24

*Taylor v. Axion Power Int'l, Inc. (In re Mega-C Power Corp.)*, 2010 Bankr. LEXIS 5102 (B.A.P. 9th Cir. June 29, 2010), *aff'd*, 460 Fed. Appx. 693 (9th Cir. 2011) *cert. denied*......................................................................................................................23, 24

*Thomson v. Bank of Amer. (In re Lamanna)*, 23 Fed. Appx. 759, 2001 U.S. App. LEXIS 25944 (9th Cir. 2001) .............................................................................................17

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011).........................................2

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009).............................................................2

*Valdez v. Kismet Acquisition, LLC*, 474 B.R. 907 (S.D. Cal. 2012)...........................................25

*Vertex Distrib. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1982) ...............19, 20, 23

*Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279 (1980)...........................................................21

## Statutes

11 U.S.C. § 1112(b)(4)(N)...........................................................................................................15

11 U.S.C. § 1141(d)(3) ................................................................................................................16

11 U.S.C. § 1142 .........................................................................................................................11

11 U.S.C. § 1142(b) ....................................................................................................................15

11 U.S.C. § 363 ....................................................................................................5, 12, 16, 21, 22, 23

11 U.S.C. § 524 ............................................................................................11, 16, 18, 19

28 U.S.C. § 157(b)(2) ....................................................................................................................1

28 U.S.C. § 157(c)(1) .....................................................................................................................1

28 U.S.C. § 157(c)(2) .....................................................................................................................1

Bankruptcy Code § 1112 (b) (7) (8) ............................................................................................15

RCW 61.24.100 ...........................................................................................................................17

## Rules

Fed. R. Civ. P. 65 .........................................................................................................................17

Fed. R. Civ. P. 8012......................................................................................................................i

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## INTRODUCTION

The Court should affirm the Bankruptcy Court's judgment dismissing the contempt cause of action against the Orse Defendants.[1]  The Bankruptcy Court did not abuse its discretion in ruling that Paragraph VII.6 of the Chapter 11 Plan of Reorganization ("CDC Plan") of CDC Properties I LLC ("CDC") was not a definite and specific order within the plan but a contractual provision properly enforced by a breach of contract action.  Contrary to the arguments raised by MLMT 2005-MCP1 Washington Office Properties, LLC ("MLMT"), the Bankruptcy Court did not hold that terms of the CDC Plan were not incorporated in the order confirming the CDC Plan ("Confirmation Order") or that the lack of incorporation was the basis for its decision.

This appeal follows a four-day trial out of which the Bankruptcy Court rendered two separate decisions regarding the three claims for relief asserted by MLMT in its Amended Complaint. The Bankruptcy Court determined that two of the claims (breach of contract and civil conspiracy to tortiously interfere) were "none-core" claims under 28 U.S.C. § 157(c)(1), and that because MLMT had not consented to enter a final order on these claims, *see* 28 U.S.C. § 157(c)(2), it lacked authority to enter a final order and entered proposed findings of Fact and Conclusions of Law (the "Non-Core Decision"), Dkt No. 2.[2]  This Court subsequently entered an order adopting the Non-Core Decision, Dkt No. 8, and a final judgment dismissing the case, Dkt No. 9.  The Bankruptcy Court determined that the third claim for civil contempt was a core proceeding under 28 U.S.C. § 157(b)(2), and accordingly entered Findings of Fact and Conclusions of Law (the

---

[1] The Orse Defendants are Eric D. Orse ("Orse") and the Law Firm of Karr Tuttle Campbell, PS. ("Karr Tuttle").

[2] All docket references ("Dkt. No. __") are to this case. References to ("ECF No. __") refer to the docket numbers in the Bankruptcy Court, Adv. No. 18-04073.  References to "App." are to the Appendix filed by MLMT, Dkt. No. 12.

APPELLEES' BRIEF - 1
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"Decision")[3] and a Final Order and Judgment for Civil Contempt Claim, is the subject of this appeal.

MLMT's core and non-core claims involve both overlapping facts and causes of action. The portions of both the Non-Core Decision and the Decision, respectively labeled Proposed Finding of Facts and Finding of Facts, are virtually identical in their beginnings,[4] and other identical facts in the decisions are otherwise interwoven. One of the non-core claims alleged by MLMT was breach of contract: MLMT claimed that CDC breached the very same Transfer Restriction in the CDC Plan that MLMT seeks in this appeal to hold the Orse Defendants in contempt for allegedly violating. In its Proposed Findings of Fact and Conclusions of Law dismissing the contract claim, which this Court previously adopted and entered judgment upon, Dkt. Nos. 8, 9, the Bankruptcy Court found as a matter of law that the violation of the transfer restriction that MLMT alleges as the basis for civil contempt was not the cause in fact or legal cause of MLMT's damages.

## STANDARD OF REVIEW

An order denying a motion for civil contempt is reviewed for an abuse of discretion. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

---

[3] Bankruptcy Court, ECF No. 88, App. 214- 227.

[4] *Compare* Decision at 4:16 to 8:10, App. 217-221 *with* Non-Core Decision at 5:5 to 9:4, Dkt. No. 2.

APPELLEES' BRIEF - 2
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

This Court may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## STATEMENT OF ISSUES

1.     Did the Bankruptcy Court correctly hold that Paragraph VII.6 of the CDC Plan was not a definite and specific order within the plan but a contractual provision properly enforced by a breach of contract action?

2.     Is Paragraph VII.6 of the CDC Plan a definite and specific order that could support a finding of contempt?

3.     Is the Bankruptcy Court's conclusion of law previously adopted by this Court in Dkt. No. 8 (which was not appealed) res judicata in this appeal that the breach of the transfer restriction in VII.6 of the CDC Plan was not the legal cause or cause in fact of MLMT's claimed damages?

## STATEMENT OF THE CASE

### I.     The MLMT Loans and the CDC Plan

CDC is a wholly-owned subsidiary of CDC Acquisition Company I LLC ("CDC Acquisition"), which is a single member LLC owned and controlled by Prium Companies, L.L.C. ("Prium"). (Decision at 4:17-19, ECF No. 88, App. 217). Plaintiff MLMT was the senior secured creditor of CDC pursuant to two loans (the "Loans"). *(Id.* at 4:19-20, App. 217). The Loans were secured by a valid and perfected first priority deed of trust (the "Deed of Trust") on several commercial real properties located in the State of Washington that were owned by CDC at the time the Loans were issued (the "CDC Properties"). *Id.* at 4:20-5:2, App. 218). The Deed of Trust contained a due on sale clause that prohibited CDC from conveying the CDC Properties without

APPELLEES' BRIEF - 3
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

the prior written consent of the lender. (*Id.* at 5:4-5, App. 218; Deed of Trust § 9.02, ECF 69, App. 7).

CDC defaulted under the Loans and, on February 10, 2011, filed a chapter 11 bankruptcy case in the Bankruptcy Court (the "CDC Bankruptcy Case"). (Decision at 5:6-8, ECF 88, App 218). On November 22, 2011, the Bankruptcy Court issued an order confirming the CDC Plan. (*Id.* at 5:8-9, App. 218). Section VII of the CDC Plan provides that on the Effective Date, "[a]ll of the Assets shall vest in the Reorganized Debtor free and clear of all liens, security interests and claims except as otherwise expressly provided for in the [CDC] Plan." (Id. 5:9-12, App. 218). Paragraph VII.6 also included a transfer restriction with respect to the CDC Properties:

> The Reorganized Debtor may sell or refinance the Real Property, or any component thereto at any time if the proceeds of the sale or refinance are sufficient to pay all Allowed Claims in Classes 1-5 and sums otherwise required to be paid under the terms of this Plan. Any sale of the Real Property shall be: (a) free and clear of all liens and monetary encumbrances pursuant to section 363 of the Bankruptcy Code, and (b) exempt from excise tax pursuant to section 1146 of the Bankruptcy Code and section 458-61A-207 of the Washington Administrative Code.

(*Id.* at 5:12-18, App. 218). The Bankruptcy Court defined the first sentence of Paragraph VII.6 as the "Transfer Restriction." (*Id.* at 6:1-2, App. 219). Thus, the CDC Plan (i) prohibited CDC from transferring the CDC Properties unless the proceeds of the sale or transfer were sufficient to, among other things, fully repay the Loans, and (ii) permitted such a transfer only if the CDC Properties are sold free and clear of all liens and monetary encumbrances, which necessarily includes the Deed of Trust. The CDC Bankruptcy Case was closed on February 15, 2012. (*Id.* at 6:2-7, App. 219).

## II. The Price/Um and Prium Bankruptcies

On October 2, 2013, Orse was appointed as the chapter 11 trustee of the consolidated bankruptcy estates of Hyun J. Um, Jin S. Um, Thomas W. Price, and Patricia A. Price in the Bankruptcy Court (the "Price/Um Bankruptcy Case"). (*Id.* at 6:8-10, App. 219). Messrs. Price and

APPELLEES' BRIEF - 4
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Um owned controlling membership interests in a large number of LLCs, including Prium. (*Id.* at 6:10-12, App. 219). Karr Tuttle was appointed as Orse's attorneys. In two management orders entered in the Price/Um Bankruptcy Case, the court ratified Orse's authority to manage various entities controlled by Price and Um, including Prium and its subsidiaries, which included CDC Acquisition and CDC. (*Id.* at 6:12-15, App. 219).

On August 15, 2014, Orse commenced a voluntary chapter 11 bankruptcy for Prium in the Bankruptcy Court (the "Prium Bankruptcy Case"). (*Id.* at 6:16-17, App. 219). By orders dated October 2, 2014 and February 27, 2015, the Bankruptcy Court ratified Orse's management authority over Prium's lower tiered subsidiaries that he had previously exercised in his capacity as trustee of the Price/Um Bankruptcy Case. (*Id.* at 6:17-20, App. 219). As the management representative for the member-owner of CDC, Orse's responsibility was to the owners of CDC, CDC Acquisition and ultimately Prium. (Non-Core Decision at 7:8-10, Dkt. No. 2).

## III. The Sale of the Wenatchee Properties

In January 2016, CDC closed a sale of one of the CDC Properties located in Wenatchee, Washington ("Wenatchee Property"). (Decision at 6:21-22, App. 219). The Wenatchee Property was not sold pursuant to 11 U.S.C. § 363 free and clear of liens, nor did the proceeds of the sale pay all creditors in full. (*Id.* at 6:22-23, App. 219). 100% percent of the net proceeds were applied to the A Note principal balance. (*Id.* at 6:23-24, App. 219). The purchase and sale agreement for the Wenatchee Property included language expressly conditioning CDC's obligation to close and convey title "upon the holder of the Deed of Trust agreeing to release the Property from the Deed of Trust in consideration of payment of all or a portion of the sale proceeds." (*Id.* at 6:25-7:4, App. 219-20). MLMT approved the sale of the Wenatchee Property. (*Id.* at 7:4-5, App. 220).

APPELLEES' BRIEF - 5
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## IV.    CDC Defaults on the Loans and the Sale to Pilevsky Group

After confirmation of the CDC Plan, CDC defaulted on the Loans when there was insufficient cash to make certain required payments thereunder. (*Id.* at 7:6-7, App. 220).  On March 11, 2016, MLMT commenced nonjudicial foreclosure proceedings with respect to the CDC Properties. (*Id.* at 7:8-9, App. 220).  In May 2016, MLMT filed a petition in Washington state court and obtained an Order Appointing Custodial Receiver over the CDC Properties. (*Id.* at 7:9-11, App. 220).  On or about July 1, 2016, MLMT served, and subsequently recorded, Notices of Trustee's Sales with respect to the CDC Properties (the "Notices of Sale"). (*Id.* at 7:11-13, App. 220).  Pursuant to the Notices of Sale, nonjudicial foreclosure sales of the CDC Properties were scheduled for October 21, 2016. (*Id.* at 7:13-15, App. 220).

On July 19, 2016, Kazu Yamaguchi, managing member of SNS LLC, a purchasing group, sent an unsolicited email to the Office of U.S. Trustee, copying Diana Carey ("Carey") of Karr Tuttle, expressing interest in acquiring the membership interest for CDC. (*Id.* at 7:16-19, App. 220).  SNS LLC was controlled by certain persons in a group that later came to be known in this proceeding as the Pilevsky Group. (*Id.* at 7:19-8:1, App. 220-21).  Soon thereafter, Carey and Karr Tuttle attorney Michael Feinberg ("Feinberg") were connected with Robyn Tuerk ("Tuerk"), corporate general counsel for Phillips International, to negotiate the proposed sale. After the offer was accepted, Karr Tuttle and Tuerk negotiated a transaction on behalf of the purchaser to acquire CDC Acquisition's membership interests in CDC.  (*Id.* at 8:2-6, App. 221).

On or about August 19, 2016, CDC Acquisition, through its sole member Prium, executed a membership interest purchase agreement (the "Membership Purchase Agreement") to sell its membership interest in CDC to CDC Member LLC or its designee for $100,000. (*Id.* at 8:7-10, App. 221). CDC Member LLC was a special purpose vehicle created for the transaction by

members of the Pilevsky Group. (Non-Core Decision at 9:4-6, Dkt. No. 2). There is no evidence of any contact between the Orse Defendants and the Pilevsky Group prior to receipt of the July 2016 offer, nor that the Orse Defendants knew of any of the members of the Pilevsky Group prior to receipt of that offer. (*Id.* at 9:6-8, Dkt. No. 2). Had this Membership Purchase Agreement been consummated, it would not have violated the CDC Plan. (*Id.* at 11:1-3, Dkt. No. 2).

Soon after the Membership Purchase Agreement was signed in the last week of August 2016, the Orse Defendants realized there was a problem with that agreement. Karr Tuttle became aware that the transaction contemplated by the Membership Purchase Agreement would trigger a Washington state excise tax on that transaction of more than $500,000 (the excise tax would have been owed on the roughly $41 million value of the debt), resulting in a $400,000 net loss for the sale. (Decision at 8:10-16, App. 221). This net loss would likely be borne by the Prium estate, as there was no other entity with funds to pay the tax. The Orse Defendants had not obtained court approval to incur such a liability in the Prium Bankruptcy Case, and the Bankruptcy Court would have almost certainly rejected incurring such a liability. (*Id.* at 8:16-19, App. 221).

Given this realization, the Orse Defendants determined they had two choices: (1) renege on the sale, lose the $100,000, end up with a foreclosure of the CDC Properties, and risk a lawsuit by the buyer; or (2) ask if the buyer would be willing to convert the sale from a membership interest sale to an asset sale of the CDC Properties. An asset sale of the CDC Properties would be exempt from Washington state excise tax under the terms of the CDC Plan. (*Id.* at 9:1-6, App. 222). The Orse Defendants' concerns of a lawsuit by the buyer, which likely would have included Prium, were not unreasonable. (Non-Core Decision at 10:16-18, Dkt. No. 2). Most importantly, the concerns were focused on the interests of Prium, not the buyer or MLMT. (*Id.* at 10:17-18, Dkt.

APPELLEES' BRIEF - 7
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

No. 2). On or about August 30, 2016, Carey contacted Tuerk to propose that the Membership Purchase Agreement be set aside and the transaction be revised to be an asset sale of the CDC Properties. (Decision at 9:6-9, ECF No. 88, App. 222).

On September 9, 2016, Orse, on behalf of CDC, agreed to sell the CDC Properties to CDC Member LLC or its designee pursuant to a purchase agreement (the "Purchase Agreement") for $100,000. (*Id.* at 10:12-14, App. 223). The sale of the CDC Properties was subject to the existing indebtedness to MLMT (in excess of $41 million) pursuant to the Loans and Deed of Trust. (*Id.* at 9:14-16, App. 222). After the Purchase Agreement was executed, Tuerk advised Karr Tuttle that the designees might be tenants in common. (*Id.* at 10:18-20, App. 223). On September 22, 2016, Tuerk advised Karr Tuttle of the identities of the four tenants in common and their percentage interests (the "Purchasers"). (*Id.* at 10:20-22, App. 223). On or about September 27-29, Quit Claim Deeds were recorded conveying the CDC Properties to the Purchasers. (*Id.* at 11:3-5, App. 224). MLMT was never approached for consent to the sale, and MLMT was not informed of the sale until after it had closed and the CDC Properties had been transferred. (*Id.* at 11:6-8, App. 224). MLMT learned about the sale on September 30, 2016. (*Id.* at 11:9-10, App. 224).

On October 20, 2016, one day prior to the scheduled October 21, 2016 nonjudicial foreclosure sale, one of the four Purchasers filed a bankruptcy case in the United States Bankruptcy Court for the Eastern District of New York, and on November 28, 2016, the three other Purchasers each filed voluntary chapter 11 petitions in the same court and all four cases were consolidated *(Id.* at 11:11-18, App. 224). The Orse Defendants had no knowledge or information that the Purchasers or any one of them would file bankruptcy. (Non-Core Decision at 14:12-13, Dkt. No. 2).

MLMT spent nearly two years engaged in litigation regarding the CDC Properties, first in the Bankruptcy Court in the Eastern District of New York, and then in the bankruptcy court in

APPELLEES' BRIEF - 8
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Tacoma and the Washington state courts. (Decision at 11:19-21, ECF No. 88, App. 224). On August 3, 2018, nearly two years after the foreclosure sale of the CDC Properties was originally scheduled, the CDC Properties were sold to MLMT via a credit bid. (*Id.* at 11: 21-23, App. 224).

## V. Plaintiff's Complaint, the Trial and the Bankruptcy Court's Decision

MLMT's Amended Complaint alleged the following claims: (1) a breach of contract claim against CDC for violating the Transfer Restriction that forms the basis of the contempt claim on appeal here (Amended Complaint ¶¶ 70-77, ECF No. 50, App. 144-45); (2) a civil contempt claim against Orse and Karr Tuttle based on the Transfer Restriction (*Id.* at ¶¶ 78-85, App. 145-46); and (3) a civil conspiracy claim against Orse and Karr Tuttle for tortious interference with both the Deed of Trust and the CDC Plan. (*Id.* at ¶¶ 85-91, App. 146-48). MLMT alleged as damages the expenses it had incurred in litigating with the Pilevsky Group (*Id.* at 91, App. 48).[5]

The Bankruptcy Court held a four-day trial commencing on October 15, 2019. Because the Bankruptcy Court determined that the breach of contract claims and the civil conspiracy claims were non-core matters to which MLMT did not consent to the Bankruptcy Court entering final judgment, the Bankruptcy Court entered Proposed Findings and Conclusions of Law (previously defined herein as the Non-Core Decision. (Dkt. No. 2 at 2:11-4:9)). The Bankruptcy Court found that the Pilevsky Group intended to have the buyer under the Membership Purchase Agreement either file bankruptcy itself or transfer the CDC membership interests to entities that would then file bankruptcy in the hope of extracting some payment or concession from MLMT. (Non-Core Decision at 24:17-20, Dkt. No. 2). The Bankruptcy Court further found that the actions by the Pilevsky Group would have happened regardless of whether the agreement effectuated by the Orse

---

[5] The Bankruptcy Court dismissed MLMT's other damage claims prior to trial. See Decision at 4: 11-15, App. 217, incorporating discussion in Non-Core Decision at 4:11-17, Dkt. No. 2).

APPELLEES' BRIEF - 9
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Defendants was a sale of the CDC membership interest (which would not have violated the Transfer Restriction in Paragraph VII.6) or a sale of the CDC Properties, and that the acts of the Pilevsky Group were intervening acts that were not reasonably foreseeable. (*Id.* at 24:24-26, Dkt. No. 2). Accordingly, the Bankruptcy Court held that MLMT failed to prove that the damages it claimed would not have incurred but for the sale in violation of the Transfer Restriction. (*Id.* at 25:1-3, Dkt. No. 2).

With respect to the civil conspiracy claim, the Bankruptcy Court ruled that MLMT failed to prove that the Orse Defendants and the Pilevsky Group combined to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means. (Non-Core Decision at 18:8-10, 20:12-21, Dkt. No. 2), finding instead "[t]he Orse Defendants' actions were undertaken in good faith and were intended to promote the best interests of the Prium estate." (*Id.* at 21:13-14, Dkt. No. 2). MLMT did not object to the Proposed Findings and Conclusions of Law on the breach of contract and civil conspiracy claims, and on March 23, 2020, this Court entered an Order Adopting Findings of Fact and Conclusions of Law, (Dkt. No. 8) and a Judgment in a Civil Case (Dkt. No. 9).

The Bankruptcy Court found that the civil contempt claim was a core matter over which it had the authority to enter a final judgment. (Decision 3:11-4:5, App. 216-17). In its Decision, the Bankruptcy Court held that Paragraph VII.6 of the CDC Plan was not a definite and specific order within the plan but a contractual provision properly enforced by a breach of contract action. (Decision at 13:21-14:3, App. 226-27). On January 22, 2020, the Bankruptcy Court entered its Final Order and Judgment for Civil Contempt Claim. MLMT filed a timely Notice of Appeal of the Final Order on February 5, 2020. (ECF No. 91, App. 230-251).

APPELLEES' BRIEF - 10
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## SUMMARY OF ARGUMENT

The Bankruptcy Court correctly held that Paragraph VII.6 of the CDC Plan was not a definite and specific order within the plan but a contractual provision properly enforced by a breach of contract action. The Bankruptcy Court did not, as MLMT contends, fail to treat the Confirmation Order as incorporating the CDC Plan. This is simply a made-up issue. Nowhere in the Decision does the court say that this was the basis of its decision. The distinction the Bankruptcy Court drew here was not based on the failure of the Confirmation Order to incorporate the CDC Plan but on those provisions of a plan or confirmation order that constitute definite and specific orders of the court as opposed to those that constitute mere contract terms.

The overwhelming weight of authority is that a confirmed plan constitutes a new contract between the debtor and its creditors that substitutes the treatment provided for the prepetition obligations discharged by the plan. The plan terms, which are essentially contract terms, may be enforced in any court of competent jurisdiction including state courts. Indeed, it not unusual for a bankruptcy court to abstain from hearing an action to enforce the contractual provisions of a plan.

Only those provisions of a plan that implement the substantive provisions of specific code sections such as the discharge injunction under 11 U.S.C. § 524 or the authority of the court under 11 U.S.C. § 1142, have been held by the courts as giving rise to a contempt claim. No case in the Ninth Circuit or elsewhere holds that the violation of contractual provisions of a confirmed chapter 11 plan may be enforced by contempt. The unstated premise of MLMT's argument, which is unsupported by any citation to authority, is that any violation of any term of a plan is potentially an act of contempt. This is simply not the law.

While the Bankruptcy Court found that there was clear and convincing proof of the noncompliance with Paragraph VII.6, it further held that "not every term in a confirmed plan can

APPELLEES' BRIEF - 11
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

be treated as a specific and definite order of the court which would give rise to a civil contempt claim." (*Id.* at 13:16-17, 22-23, App. 226). The Bankruptcy Court correctly held that Paragraph VII.6 "was not a specific and definite order of the court" but "a mere contractual provision that may be the basis for a breach of contract claim, but not a civil contempt claim." (*Id.* at 13:21-5, App. 226).

In construing Paragraph VII.6, the Bankruptcy Court simply ignored the reference to 11 U.S.C. § 363, which it found "perplexing." This section of the Bankruptcy Code permits the sale of property when there are insufficient proceeds to pay all creditors who have liens against the property. In a prior sale of certain CDC property in Wenatchee, which sale did not pay all creditors in full and was not conducted pursuant to § 363, the Bankruptcy Court found the Wenatchee sale unobjectionable because MLMT was aware of and consented to the sale. In effect, the court treated the plan provision as a contract, which the parties, as between themselves, could modify. In the later sale to the Pilevskys, the Bankruptcy Court drew the distinction that the lenders consented to the Wenatchee sale, but the lenders did not consent to the Pilevsky sale. This distinction – whether or not consent is a requirement – is not apparent from Paragraph VII.6, which does not unambiguously give notice of what conduct is outlawed. Additionally, contempt requires a finding that a contempt sanction is justified. The Bankruptcy Court found "[t]he Orse Defendants were focused on saving the deal and avoiding a lawsuit against Prium for breach of the Membership Purchase Agreement." (Non-Core Decision, 20:16-17, Dkt No. 2). The Orse Defendants had no knowledge of the Pilevsky Group or of their plans for the CDC Properties. (*Id.* at 20: 18-19). The Orse Defendants actions "were undertaken in good faith and were intended to promote the best interests of the Prium estate." (Non-Core Decision, 20:16-19: 21:13-14, Dkt No. 2).

APPELLEES' BRIEF - 12
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Lastly, MLMT suffered no damages from any breach of Paragraph VII.6. The Bankruptcy Court found in dismissing MLMT's breach of contract claim against CDC for violating Paragraph VII.6 that the breach was not the cause in fact and legal cause of MLMT's damages. The Court early in this case adopted these findings and entered judgment on them. Dkt. Nos. 8 & 9. Those findings are now res judicata.

## ARGUMENT

## I. The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing the Contempt Claim

MLMT's argument that the court failed to treat the CDC Plan as incorporated in the Confirmation Order is based on a gross misreading of the Bankruptcy Court's opinion. It appears this argument is advanced to create an issue where no issue exists.

### A. The Bankruptcy Court Applied the Correct Legal Standard.

The Bankruptcy Court did not fail to treat the CDC Plan as incorporated in the Confirmation Order, nor was that the basis of the Bankruptcy Court's conclusion that there was no contempt. Nowhere in its Decision did the Bankruptcy Court indicate that it did not regard the CDC Plan as being incorporated in the Confirmation Order. To the contrary, the Bankruptcy Court specifically recognized that the terms of the plan were incorporated in the confirmation order, citing *In re Dendy*, 396 B.R. 171 (Bankr. D.S.C. 2008). In *Dendy,* the court first evaluated whether the alleged contemptuous act violated the terms of the plan, and then separately evaluated whether they violated the terms of the confirmation order. *Id*. at 180-181. The bankruptcy court expressly recognized that contempt could be based on a violation of a plan. The basis for the Bankruptcy Court's decision was not that the plan was not incorporated in the confirmation order, but rather on the distinction "between the definite and specific orders of the court contained in the <u>plan or confirmation order</u> and the mere provisions of the plan." (Decision at 13:4-5, ECF No. 88, App.

APPELLEES' BRIEF - 13
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

226) (emphasis supplied). The court further indicated that "a finding of civil contempt requires language that constitutes a specific order of the court within the plan. Otherwise it is a mere contractual provision that can be a basis for a breach of contract claim." Decision at 13:7:11. The Bankruptcy Court's ruling, as discussed below, was consistent with the overwhelming weight of authority regarding the interpretation of chapter 11 plans. Indeed, in this very case, MLMT argued that Paragraph VII.6 of the Plan was a contract provision (Amended Complaint ¶ 71, App. Vol. IV, p. 144) and asserted a claim against CDC for violating it. (Non-Core Decision at 22:13-14, Dkt. No. 2.)

**B.**    **The Bankruptcy Court Correctly Concluded that Paragraph VII.6 of the Plan Was Not A Specific and Definite Order but a Contractual Provision.**

The Bankruptcy Court correctly concluded the Paragraph VII.6 of the Plan was not a specific and definite order but a contractual provision that could only be the basis of a breach of contract claim. MLMT's argument is premised on a fundamental misunderstanding of chapter 11 plans. The unstated premise of MLMT's argument is that all provisions of the plan have the force of a definite and specific order, and that any violation of any provision of the terms of a chapter 11 plan is an act of contempt. MLMT cites no case that supports this broad proposition and it is not the law.

The Ninth Circuit has defined a plan of reorganization, such as the CDC Plan, as "essentially a contract between the debtor and [its] creditors." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). As to post-confirmation debts, a Chapter 11 plan of reorganization constitutes a new contract between a debtor and his or her creditors. *Murdock v. Holquin*, 323 B.R. 275, 282 (N.D. Cal. 2005). "[O]nce the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself."

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

*In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992); *accord Paul v. Monts*, 906 F.2d 1468, 1471, n.3 (10th Cir. 1990) (stating that action for breach of obligations under a confirmed Chapter 11 plan was "analogous to a contract claim"). The fundamental concept of a chapter 11 reorganization is that "once the bankruptcy court confirms a plan of reorganization, the debtor is free to go about its business without further supervision or approval of the court, and concomitantly, without further protection of the court." *Southwest Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir. 2000); *Hillis Motors Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 589 (9th Cir. 1993); *Norwest Equipment Finances, Inc. v. Nath (In re D & P Partnership)*, 91 F.3d 1072, 1074 (8th Cir. 1996) (generally, once the plan has been confirmed, the estate of the debtor and the bankruptcy court's jurisdiction ceases to exist).

If a reorganized debtor defaults under the plan, creditors under a plan can initiate an action for breach of contract in a proper court, and if successful, enforce their contractual rights in any assets of the reorganized debtor. *Murdock,* 323 B.R. at 282 (citing *In re Xofox Indus. Ltd.*, 241 B.R. 541, 544 (Bankr. E.D. Mich. 1999)). Remedies are also available against the defaulting debtor under the Bankruptcy Code. Where there has been a "material default by the debtor with respect to a confirmed plan," plan creditors may ask the bankruptcy court to convert a Chapter 11 to a Chapter 7, citing Bankruptcy Code Section 1112 (b) (7) (8).[6] 323 B.R. at 283. The bankruptcy court may also order the debtor to take actions necessary to transfer property and perform other acts to carry out the plan under 11 U.S.C. § 1142(b). *Nat'l City Bank v. Troutman Enters. (In re Troutman Enters.)*, 253 B.R. 8, 11 (B.A.P. 6th Cir. 2000).

More often than not, the proper court for a creditor to seek to enforce a plan provision is

---

[6] Note: The current statutory provision is 11 U.S.C. § 1112(b)(4)(N).

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

the state court because of the bankruptcy court's limited post-confirmation jurisdiction, as courts in the Ninth Circuit and elsewhere routinely refuse to reopen confirmed bankruptcy cases to enforce alleged breaches of a plan of reorganization. *See, e.g.*, *In re Boise Gun Co.,* 2018 Bankr. LEXIS 72 at *12-13 (Bankr. D. Id. Jan. 12, 2018) (denying unpaid creditor's motion to enforce Chapter 11 plan without prejudice to creditor seeking to enforce plan obligations through "appropriate non-bankruptcy law processes and remedies."); *In re Charleston Assocs., LLC,* 2018 Bankr. LEXIS 2227, at *14-16 (D. Nev. July 24, 2018) (denying without prejudice creditor's motion to enforce payment of obligation owed it under the plan, which is properly enforced by a contract action in a state or federal court of competent jurisdiction). Absent circumstances invoking specific bankruptcy remedies provided for in the Bankruptcy Code or some other reasons justifying the invocation of bankruptcy jurisdiction, enforcement of a specific chapter 11 provision is a breach of contract matter that can be litigated in any court of competent jurisdiction. In contrast, when a creditor violates the automatic stay imposed by § 363, the discharge injunction imposed by sections 524 or 1141(d)(3) of the Bankruptcy Code, or a specific injunction or release provision contained in the confirmed plan, the bankruptcy court is the only court which can grant the debtor effective relief.

Chapter 11 plans may, in addition to the stays imposed under Sections 524 and 1141(d)(3), contain specific injunctive provisions as well as exculpation clauses and releases prohibiting actions against the debtor and other parties in the reorganization process. *See* e.g., *In re Am. W. Dev., Inc.*, 2018 Bankr. LEXIS 1346 *10-18 (Bankr. D. Nev. Apr. 12, 2018). Violation of such plan provisions may be the basis of contempt. *Id.* at *17-18. Paragraph VII.6 of the CDC Plan is not such a provision. The Bankruptcy Court correctly held that Paragraph VII.6, like the due on sale or encumbrance provisions contained in the Deed of Trust (Deed of Trust, § 9.02, ECF No.

APPELLEES' BRIEF - 16
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

69, App. 7), which was expressly incorporated in the CDC Plan (Plan, Class 3, subpara a, ECF No. 119, App. 25), was a mere contractual provision that could be the basis for a breach of contract claim. The fact that the Transfer Restriction, like Article 6 of the Deed of Trust, is a negative covenant did not convert Paragraph VII.6 into a specific and definite injunctive order. Paragraph VII.6 did nothing more than enlarge the anti-alienation covenant that was already contained in the due on sale provision in the MLMT deed of trust.[7] It did not convert what was a simple contract provision into a specific and definite order of the court.

MLMT cites no case in the Ninth Circuit or elsewhere that holds that the violation of contractual provisions of a confirmed chapter 11 plan may be enforced by contempt. MLMT relies principally on *Thomson v. Bank of Amer. (In re Lamanna)*, 23 Fed. Appx. 759, 2001 U.S. App. LEXIS 25944 (9th Cir. 2001) (App. Brief, Dkt. 12 at 15:18-22). *Lamanna* is an unpublished case, whose citation as authority is prohibited by Ninth Circuit Rule 36-3, prohibiting citation of unpublished dispositions before January 1, 2007, except in three narrow circumstances not present here. Based on Ninth Circuit Rule 36-3, the Court should disregard all references to this case. If the Court should find that the references to *LaManna* can be considered, the case is distinguishable on its facts. The case does not involve a confirmed chapter 11 but rather violations of preliminary and permanent injunctions entered under Fed. R. Civ. P. 65(d).[8]

---

[7] MLMT also claimed a breach of this covenant as part of its contract claim. (Non-Core Decision at 22: 4-12, Dkt. No. 2). The Bankruptcy Court found this claim was barred by the anti-deficiency language in RCW 61.24.100. (Non-Core Decision at 22:10-12, Dkt. No. 2).

[8] *Lamanna* does not even stand for the proposition for which it is cited. Its first holding is that a party cannot collaterally attack an injunction as a defense to contempt. 23 Fed Appx. at 759. The settlement agreement which was referred to in both the preliminary and permanent injunctions was not attached to either injunction; on this basis, it was contended the injunctions were not valid. *Id.* The court noted that even if the injunctions could be collaterally attacked, this argument would fail because the issue is "whether parties have sufficient notice of the prohibited acts to comply with the injunction." *Id.* The second holding is that agents of parties are bound by the injunction, the same as the party. Neither holding is implicated

APPELLEES' BRIEF - 17
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

All of the cases involving violation of bankruptcy plans cited by MLMT either involve violations of the automatic stay, which is an injunction, *see In re Dyer*, 322 F.3d at 1191 (9th Cir. 2003); or plan provisions that implicate the discharge injunction in 11 U.S.C. § 524. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1065-66 (9th Cir. 2002) (attempt to enforce discharged debt in violation of § 524 discharge injection); *Deed & Note Traders, L.L.C. (In re Deed & Note Traders, L.L.C.)*, 2018 Bankr. LEXIS 759, at *10-11 (B.A.P. 9th Cir. Mar. 14, 2018) (claim that secured creditors violated plan by returning payments to debtor, or refusing to accept payoffs of restructured debt, insisting that original restructured amount was due); *In re Dendy*, 396 B.R. at 178 (whether failure to remove a void lien without further collection efforts violated discharge injunction). Paragraph VII.6 of the CDC Plan does not seek to effectuate § 524 or any of other proscriptive provision of the Code; it is not a definite and specific order within the plan.

The Bankruptcy Court correctly held that "not every term in a confirmed plan can be treated as a specific and definite order of the court which would give rise to a civil contempt claim. (Decision at 13:22-23, App. 226). The Bankruptcy Court correctly held that Paragraph VII.6 "was not a specific and definite order of the court" but "a mere contractual provision that may be the basis for a breach of contract claim, but not a civil contempt claim." (*Id*. at 13:21-5, App. 226). The Bankruptcy Court did not abuse its discretion in dismissing the civil contempt claim.

### C. Making All Plan Violations Acts of Contempt Will Have Negative Consequences.

MLMT's policy argument regarding the negative consequence of affirming the bankruptcy court is based entirely on its erroneous argument that the Bankruptcy Court did not view the CDC

---

here. There is no dispute that the CDC Plan was incorporated in the Confirmation Order, or that the agents of CDC are obligated to comply with it.

APPELLEES' BRIEF - 18
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Plan as incorporated by the Confirmation Order. As pointed out above, this is not the law and violates the underlying paradigm of chapter 11 reorganizations that "once the bankruptcy court confirms a plan of reorganization, the debtor is free to go about its business without further supervision or approval of the court, and concomitantly, without further protection of the court." *Danzig,* 217 F.3d at 1140; *Hawaii Automobile Dealers' Assn*, 997 F.2d at 589. Case law in the Ninth Circuit and elsewhere holds that post confirmation breaches under a confirmed plan are to be addressed as a contract claim in a non-bankruptcy court of competent jurisdiction unless a specific provision of the Bankruptcy Code is invoked such as 11 U.S.C. § 1142 or the discharge injunction in 11 U.S.C. § 524. Not only is MLMT's policy argument (that the violation of any plan provision is a potential contempt of court) unsupported by any case law, it would be inimical to the reorganization process. Treating every plan violation as a potential matter of contempt would overwhelm the bankruptcy courts with matters that the Bankruptcy Code contemplates will be adjudicated in non-bankruptcy forums like other contractual disputes. It would also undermine one of the principal goals of chapter 11 reorganizations by placing reorganized debtors a competitive disadvantage by turning garden variety contract litigation into high stakes contempt proceedings.

## II. The Orse Defendants Did Not Commit Any Act of Contempt

In a civil contempt proceeding, the moving party must show by clear and convincing evidence that the contemnors intentionally violated a specific and definite order of the court. *In re Dyer*, 322 F.3d at 1191. The moving party must also show that the contempt sanction is justified. *In re Bennett*, 298 F.3d at 1069. "[T]he contempt must be proved by clear and convincing evidence. This requires more than does the preponderance of the evidence standard applicable to most civil cases." *Vertex Distrib. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (citations omitted).

APPELLEES' BRIEF - 19
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

The standards for a civil contempt are set forth in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019). In *Taggart*, the Court settled a split in authority and concluded that "neither a standard akin to strict liability nor a purely subjective standard is appropriate." *Id.* Instead, the Court found that a civil contempt finding was only appropriate where "there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.* (emphasis in original). The standard is an objective one, analyzing whether there is *any* reasonable basis for concluding that the conduct in question might be lawful. *Id.* If any reasonable basis exists for the proposition that the conduct might be lawful under the order, there can be no civil contempt.

A. **Paragraph VII.6 is too Vague and Ambiguous to Support a Contempt Finding.**

Civil contempt is a "severe remedy." *Taggart,* 139 S. Ct. at 1802. Thus, the standards for a contempt finding reflect that principles of "basic fairness requir[e] that those enjoined received explicit notice of what conduct is outlawed." *Id.* (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (quotation marks omitted); *see also Vertex*, 689 F.2d at 899 ("Where the language of a consent judgment is too vague, it cannot be enforced; to do so would be an invalid exercise of judicial authority," (citing *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S. Ct. 201, 19 L. Ed. 2d 236 (1967)). "[C]ivil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801. Subjective intent is not relevant to determining whether a party's conduct was contemptuous, but may be relevant to other purposes, such as the extent of the appropriate sanction for contemptuous conduct. "[A] party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id.* at 1802.

APPELLEES' BRIEF - 20
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

The post-*Taggart* case of *Clearant, LLC v. Nacion*, 2019 U.S. Dist. LEXIS 100558, at *4 (E.D. Mo. June 17, 2019) illustrates *Taggart's* direction that those enjoined must receive explicit notice of what conduct is outlawed. There, after citing *Taggart's* language regarding explicit notice, the court held that the defendant could not be held in contempt because the order in question was ambiguous regarding whether it proscribed the defendant's conduct.

Even if MLMT is correct that any breach of a confirmed plan may be enforced by contempt, Paragraph VII.6 fails to unambiguously give notice of what conduct is outlawed. In interpreting Paragraph VII.6 of the CDC Plan, the Bankruptcy Court violated the cardinal rule of contract interpretation that a court must strive to give effect to all provisions in a contract and to give meaning to every term. *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980):

> In construing a contract, a court must interpret it according to the intent of the parties as manifested by the words used. Courts can neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it. An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective. This should especially be true when the writing is the product of a long period of negotiation with both parties having been represented by competent counsel.

*Id.* (internal citations omitted).

In discussing its interpretation of Paragraph VII.6, the Bankruptcy Court noted that "[t]he reference in part (a) of the second sentence of Paragraph VII.6 to a sale free under 11 U.S.C. § 363 is perplexing, given that the sale would be post-confirmation, at which point the title would be vested in the Reorganized Debtor, not the Debtor's bankruptcy estate. 11 U.S.C. § 363 only applies to sales by bankruptcy estates." Decision 10:1-4, app. 223). However, Section 363 of the Bankruptcy Code expressly permits sales free and clear of liens on a property when the sale price is insufficient to pay all creditors. *In re Jolan, Inc.*, 403 B.R. 866, 869 (Bankr. W.D. Wash. 2009).

APPELLEES' BRIEF - 21
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Section 363 has meaning in connection with a sale free and clear of liens only when the proceeds are insufficient to pay all creditors in full. Rather than attempt to give the phrase or the intent of the § 363 language any meaning, the Bankruptcy Court simply chose to ignore it, finding that the Transfer Restriction was unambiguous, and the language regarding § 363 did not contradict or detract from the plain language of the Paragraph VII.6 Transfer Restriction. (Decision at 10:5-6, App. 223.)

In its discussion of Paragraph VII.6 in connection with sale of the Wenatchee Property, the Bankruptcy Court did not find the sale violated this paragraph despite the fact that the sale was not pursuant to § 363, was not free and clear of liens, and its proceeds did not pay all creditors in full as required by the Transfer Restriction. (*Id.* at 6:-21-7:5, App. 219-220). The Bankruptcy Court found the Wenatchee sale unobjectionable because MLMT was aware of and consented to the Wenatchee sale, and the purchase and sale was conditioned upon CDC's obligation to close and convey title "upon the holder of the Deed of Trust agreeing to release the Property from the Deed of Trust in consideration of payment of all or a portion of the sale proceeds." (*Id.*) The Bankruptcy Court distinguished the Wenatchee sale from the later sale to the Pilevskys in finding that it violated Paragraph VII.6 because "unlike the sale of the Wenatchee property, the Orse Defendants never sought or obtained MLMT's consent to the sale." (*Id.* at 10:8-10, App. 223).

The language in Paragraph VII.6 does not talk about consent. The Orse Defendants were not involved in negotiation of the CDC Plan. They had no involvement with CDC until almost two years after the entry of the Confirmation Order. There is no way to discern from the language of Paragraph VII.6 that a sale is permissible if the consent of the secured creditor is obtained, but is not if the creditor does not consent. Paragraph VII.6 does not satisfy *Taggart*'s requirement that

APPELLEES' BRIEF - 22
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

a court may only find contempt where there is a specific and definite order that fails to unambiguously give notice of what conduct is outlawed.

Under the terms of *Taggart*, a reasonable belief regarding the intent of the plan in interpreting its provisions, even if mistaken, should not result in a finding of contempt. The Confirmation Order directs CDC to "carry out the terms <u>and intent</u> of said Plan." (Order at ¶ 1, App.14). (emphasis supplied). The reference in the Plan to § 363 clearly contemplated and intended a mechanism that permitted a sale that does not pay all creditors in full. From both CDC's perspective and MLMT's perspective, there were good reasons to sell the Wenatchee Property. The parties treated Paragraph VII.6 as a contract and modified it by agreement to permit the Wenatchee sale, even though the sale was not a free and clear sale under § 363 nor did it pay all creditors in full. The Bankruptcy Court likewise treated Paragraph VII.6 as a contract in its analysis distinguishing the Wenatchee sale from the sale to the Pilevskys based on consent. The Bankruptcy Court determined that Paragraph VII.6 was a contract provision, and even if was not, it fails to unambiguously give notice of what conduct is outlawed.

**B.      There is No Basis for an Award of Sanctions.**

Even if Paragraph VII.6 constituted a "specific and definite" order of the Court (which it is not), the actions of the Orse Defendants do not support an award of sanctions. It is a defense to civil contempt if the alleged contemnor had a "good faith and reasonable interpretation of the order." *Vertex*, 689 F.2d at 889 (quoting *Rinehart v. Brewer*, 483 F. Supp. 165, 171 (S.D. Iowa 1980) (Where a defendant's act "appears to be based on a good faith and reasonable interpretation of [the court's order]," he should not be held in contempt.). Thus, even if the sale to Pilevskys violated the CDC Plan, this is not determinative on the issue of contempt. *See, e.g.*, *Taylor v. Axion Power Int'l, Inc.* (*In re Mega-C Power Corp.*), 2010 Bankr. LEXIS 5102, at *40 (B.A.P. 9th Cir.

APPELLEES' BRIEF - 23
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

June 29, 2010), *aff'd*, 460 Fed. Appx. 693 (9th Cir. 2011) *cert. denied*. In *Taylor*, the court ruled that even where a defendant is found to have violated a bankruptcy plan order based on an erroneous interpretation of an order, the plaintiff must still meet its burden in showing that the violation of the order was intentional and that sanctions are justified. *Id.* at *40-41. The court in that case reviewed a bankruptcy court's determination that though it disagreed with the defendant's interpretation of a bankruptcy order, it nevertheless found that the defendant's interpretation was "not without some logic." *Id* at 41. Thus, there was a reasonable interpretation of the plan by which the wrongfulness of the defendants' act was not clear, *and* the plaintiff had failed to demonstrate convincing evidence of an intentional violation of the court's order sufficient to justify an award. *Id.* at *42. The reviewing court held that the bankruptcy court "applied the correct rule of law and the proper evidentiary standard." *Id.* at *44. The court also noted that the plaintiffs failed to prove they were damaged by the violation. *Id.* at *42.

While the subjective intents of the parties do not determine whether an order has been violated, "[t]he threshold question regarding the propriety of an award turns . . . on a finding of 'willfulness.'" *In re Dyer,* 322 F.3d at 1190-91; *see also Taggart*, 139 S. Ct. at 1798 ("Civil contempt sanctions may be warranted when a party acts in bad faith, and a party's good faith may help to determine an appropriate sanction."). *Taggart's* holding addressed only the finding of contempt in the first instance and did not overrule the well-established Ninth Circuit precedent additionally requiring that contempt sanctions must be justified. *See Taylor*, 2010 Bankr. LEXIS 5102 at *39-40 ("The moving party must *also show* that the contempt sanction is justified.") (citing *Bennett*, 298 F.3d at 1069, emphasis added).

The Bankruptcy Court found "[t]he Orse Defendants were focused on saving the deal and avoiding a lawsuit against Prium for breach of the Membership Purchase Agreement. (Non-Core

APPELLEES' BRIEF - 24
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Decision at 20:16-17, Dkt. No. 2). The Orse Defendants had no knowledge of the Pilevsky Group or of their plans for the CDC Properties. (*Id*. at 20: 20-21). "The Orse Defendants' actions were undertaken in good faith and were intended to promote the best interests of the Prium estate." (*Id*. at 21:13-14). "Their goal was to save a deal that would bring in $100,000 for the Prium estate, not to facilitate the Pilevsky Group's unstated intent to file bankruptcy." (*Id*. at 21:16-18, Dkt. No. 2). Under these circumstances, even if Paragraph VII.6 constituted a "specific and definite" order of the Court, the actions of the Orse Defendants do not support an award of sanctions.

## III. Defendants Suffered No Contempt Damages as a Proximate Result of the Alleged Contempt

An award of compensatory damages for civil contempt requires a demonstration that the damages were actually caused by the contempt. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). The Ninth Circuit Bankruptcy Appellate Panel has noted that courts in the Ninth Circuit have held "that compensatory contempt sanctions are limited to damages <u>directly</u> resulting from the contumacious conduct." *Faden v. Segal (In re Segal)*, 2015 Bankr. LEXIS 286, at *34 (B.A.P. 9th Cir. Jan. 29, 2015) (emphasis added) (citing *Valdez v. Kismet Acquisition, LLC*, 474 B.R. 907, 922-23 (S.D. Cal. 2012); *Lovell v. Evergreen Resources, Inc.*, 1995 U.S. Dist. LEXIS 22824, at *7-8 (N.D. Cal. 1995)). The evidence of loss identified by the plaintiff must be specific to justify a compensatory damages award. *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983).

The purpose of tort damages is to place the plaintiff in the condition he would have been in had the wrong not occurred. *Dong Wan Kim v. O'Sullivan*, 133 Wn. App. 557, 564, 137 P.3d 61 (2006). To ensure that damage awards accurately reflect actual losses and avoid windfalls, the

APPELLEES' BRIEF - 25
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

burden is on the plaintiff to show what damages it actually would have recovered but for the wrongful act.  *Id.*  Here, the Bankruptcy Court expressly found:

> The filing of multiple bankruptcies and the Purchasers' other efforts to restrain MLMT's nonjudicial foreclosure sale were not reasonably foreseeable, and the attorneys' fees incurred by MLMT in defending itself against those efforts to stymie the foreclosure were not consequential damages of CDC's breach of contract.

(Non-Core Decision at 24:10-13, Dkt. No. 2).  The Bankruptcy Court specifically found that "had the original Membership purchase Agreement been consummated it would not have violated the CDC Plan."  (Decision at 9:14-16, App. 222; Non-Core Decision 11:1-3, Dkt. No. 2).  Based on these findings, the Bankruptcy Court concluded:

> It appears the Pilevsky Group intended to have the buyer under the Membership Purchase Agreement either file bankruptcy itself or transfer the CDC membership interests to entities that would then file bankruptcy in the hope of extracting some payment or concession from MLMT. The transition of the sale from a membership interest sale to an asset sale merely altered how the bankruptcy filing would take place. The actions by the Pilevsky Group would have happened regardless of whether the agreement effectuated by the Orse Defendants was a sale of the CDC membership interest or of the CDC Properties. The acts of the Purchasers and the Pilevsky Group were intervening acts not reasonably foreseeable or within the contemplation of the parties at the time the CDC Plan was confirmed. Moreover, the Lender has failed to prove that those expenses would not have been incurred, or what expenses would not have been incurred, but for the transfer of the CDC Properties to the Pilevsky Group by CDC.

(Non-Core Decision at 24:17-25:3, Dkt. No. 2). (emphasis added).  MLMT did not file an objection to these findings of fact and legal conclusions of the Bankruptcy Court, which have now been adopted as the Findings and Conclusions of this Court, Dkt. No. 8, which has now entered a final order, Dkt. No. 9, from which no timely appeal has been taken.  This final order is binding and res judicata with respect to the issues of causation in fact, legal cause and damages.

## CONCLUSION

The Orse Defendants respectfully request that the Court affirm the Bankruptcy Court's Decision that Paragraph VII.6 of the CDC Plan was not a specific and definite order of the Court

APPELLEES' BRIEF - 26
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and therefore does not provide the basis for a civil contempt claim. Alternatively, the Court can affirm the Decision based on other grounds as set forth herein.

DATED this 19th day of June 2020.

*Attorneys for Appellees Eric D. Orse, individually, and the marital community of Eric D. Orse and Jane Doe Orse, husband and wife, Karr Tuttle Campbell, a Washington Professional Services Corporation; and CDC Properties I LLC*

KARR TUTTLE CAMPBELL

*/s/ Michael M. Feinberg* _____

Diana K. Carey, WSBA # 16239
Michael M. Feinberg, WSBA # 11811
701 5th Avenue, Suite 3300
Seattle, WA 98104
P: (206) 223-1313
F: (206) 682-7100
Email: dcarey@karrtuttle.com;
        mfeinberg@karrtuttle.com

BETTS PATTERSON & MINES

By: */s/ Steven Goldstein* _____
Steven Goldstein, WSBA #11042
701 Pike Street, Suite 1400
Seattle, WA 98101
P: (206) 292-9988
F: (206) 343-7053
Email: sgoldstein@bpmlaw.com

APPELLEES' BRIEF - 27
Case No. 3:20-cv-05106- RBL
#1322873 v5 / 40594-011

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

CERTIFICATE OF SERVICE

I, Marya Hernandez, affirm and state that I am employed by Karr Tuttle Campbell in King County, in the State of Washington. I am over the age of 18 and not a party to the within action. My business address is: 701 Fifth Ave., Suite 3300, Seattle, WA 98101. On this day, I caused to be filed with the U.S. District Court, Western District of Washington, a true and correct copy of the foregoing Appellees' Brief, by using the Court's electronic filing system, which caused service of the documents to those receiving notifications/documents via CM/ECF.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct, to the best of my knowledge.

Executed on this 19th day of June 2020 at Seattle, Washington.

*/s/ Marya Hernandez*

_____

Marya Hernandez

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100